IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROADCAST MUSIC INC., et al.,<br><br>   Plaintiff,<br><br> v.<br><br>JAVIER MENDEZ, et al.,<br><br>   Defendants.<br>_____/ | No. C-05-04047 MJJ (EDL)<br><br>**REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** |

On October 6, 2005, Plaintiffs filed this action against Defendants Javier Mendez and Michelle Khanbabian, doing business as B Street Billards, for copyright infringement. After entry of default on January 4, 2006, Plaintiff filed a motion for default judgment, which was referred to the undersigned Magistrate Judge pursuant to Civil Local Rule 72-1. The motion came on for hearing on March 21, 2006. Attorney Karen Frank appeared for Plaintiff. Defendants did not file an opposition to Plaintiff's motion and did not appear at the hearing.

**Background**

Plaintiff Broadcast Music Inc. ("BMI") has been granted the right to license the public performance rights in approximately 4.5 million copyrighted musical compositions, including those which are alleged to have been infringed in this case. Compl. ¶ 3. The other Plaintiffs are the owners of the copyrights in the musical compositions which are the subject of this lawsuit. Id. ¶ 4. Defendants Javier Mendez and Michelle Khanbabian own, operate, maintain and control B Street Billiards, a bar/restaurant establishment located at 164 South B Street, San Mateo, California 94401. Id. ¶¶ 5-8. Both Defendants have the right and ability to supervise the activities at B Street Billiards and have a direct financial interest in the establishment. Id. ¶¶ 9-10.

B Street Billiards regularly features live and recorded music performances, including music compositions from Plaintiff BMI's catalog. Compl. ¶¶ 5-6. Defendants have never obtained a license from BMI to perform those compositions. Id. ¶ 17; Declaration of Lawrence Stevens ¶¶ 5, 11.

On April 24, 2003, BMI sent a letter to B Street Billiards advising Defendants that a license was required to perform the musical compositions in BMI's catalog, and including an informational brochure and license agreement. Compl. ¶ 18; Stevens Decl. ¶ 4, Ex. C. Having received no response, BMI sent letters and agreements to both Defendants on May 5, 2003, May 29, 2003, June 24, 2003, August 5, 2003, August 21, 2003, December 23, 2003, March 22, 2004, June 3, 2004, July 12, 2004, August 2, 2004, February 15, 2005, March 1, 2005 and March 10, 2005. Compl ¶ 18; Stevens Decl. ¶ 6, Ex. C. BMI also sent letters without agreements on August 23, 2004, November 16, 2004, June 1, 2005 and August 26, 2005. Compl. ¶ 18; Stevens Decl. ¶ 7. On August 23, 2004, BMI sent Defendant Mendez an Airborne overnight letter instructing him to cease all use of BMI licensed music at B Street Billiards. Stevens Decl. ¶ 8; Ex. C. In addition during this time, BMI licensing personnel telephoned B Street Billiards on thirty-four occasions and left messages on the voice mail and spoke to Defendant Khanbabian and other person associated with the establishment's operation. Compl. ¶ 18; Stevens Decl. ¶¶ 9-10. Defendants did not respond to the letters or telephone calls, and have not purchased a license.

BMI authorized Christopher K. Pisano to visit B Street Billiards on January 13, 2005 and August 5, 2005, and to make written reports of the music being played there. Stevens Decl. ¶ 12; Ex. B. The reports contain each of the eleven unauthorized performances of musical compositions from BMI's repertoire that are alleged in the complaint. Compl. ¶ 12; Ex. A; Stevens Decl. Ex. B. On March 11, 2005, BMI sent DHL overnight letters dated March 10, 2005 to Defendants Mendez and Khanbabian advising them of the investigation and offering to furnish them with a license. Stevens Decl. ¶ 13; Ex. C. Defendants did not respond to those letters. Stevens Decl. ¶ 13.

**Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) authorizes the Court to enter judgment against a defendant against whom a default has been entered, assuming that defendant is not an infant, is not

1  incompetent or in military service.  Defendants here are not unrepresented minors, incompetent or in
2  military service.  Declaration of Karen Frank ¶ 10.

3  "The general rule of law is that upon default the factual allegations of the complaint, except
4  those relating to the amount of damages, will be taken as true." Geddes v. United Financial Group,
5  559 F.2d 557, 560 (9th Cir. 1977) (citing Pope v. United States, 323 U.S. 1, 12 (1944)).  In
6  exercising its discretion to grant default judgment, the court may consider the following factors: (1)
7  the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the
8  sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a
9  dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the
10 strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  See
11 Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Generally, upon entry of default, the
12 factual allegations of the complaint are taken as true, except for those relating to damages.  See
13 Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir.1987).

14 Here, the Eitel factors weigh in favor of default judgment.  Most importantly, the substantive
15 claims in the complaint appear to have merit and the complaint is sufficient to state those claims.  A
16 claim for copyright infringement relating to the unauthorized public performance of musical works
17 has five elements: (1) originality and authorship of the copyrighted works involved; (2) compliance
18 with the formalities of the Copyright Act; (3) proprietary rights in the copyrighted works involved;
19 (4) public performance of the compositions involved; and (5) lack of authorization for public
20 performance.  See Broadcast Music. Inc. v. Pine Belt Inv. Developers, Inc., 657 F. Supp. 1016, 1020
21 (S.D. Miss. 1987).  Moreover, vicarious liability for copyright infringement exists when: "(1) a
22 defendant has the right and ability to supervise the infringing conduct and (2) the defendant has an
23 obvious and direct financial interest in the infringement." Abode Systems Inc. v. Canus
24 Productions, Inc., 173 F. Supp. 2d 1044 (C.D. Cal. 2001) (citing Shapiro, Bernstien & Co. v. H.L.
25 Green Co., 316 F.2d 304, 307 (2d Cir. 1963), Fonovisa, Inc. v. Cherry Auction, Inc., 76 F.3d 259,
26 262 (9th Cir. 1996)); see also 17 U.S.C. § 501(a) (". . . anyone who violates the exclusive rights of
27 the copyright owner . . . is an infringer of the copyright.").

28 In its complaint, Plaintiff BMI alleges that, in compliance with the Copyright Act, the

3

Plaintiff copyright owners granted to BMI the right to license the public performance rights for the musical compositions at issue in this case. Compl. ¶¶ 3-4, 15; Declaration of Judith Saffer ¶ 5; Ex. A. BMI also alleges some musical compositions in BMI's repertoire were performed without a license or other authority to do so. Compl. ¶ 17; Stevens Decl. Ex. B. Defendants Javier Mendez and Michelle Khanbabian control B Street Billiards and have primary responsibility for the operation and management of the establishment, including the right and ability to supervise the activities there. Compl. ¶¶ 5-8. Further, Plaintiff allege that both Defendants have a direct financial interest in the establishment. Compl. ¶¶ 9-10. Therefore, Plaintiff has alleged sufficient facts to state a claim for vicarious liability for copyright infringement based on the unauthorized public performance of copyrighted musical compositions.

The remaining Eitel factors also weigh in favor of granting default judgment. First, if the motion were denied, BMI would be prejudiced because it would likely be without a remedy; BMI attempted to reach a compromise with Defendants but was unsuccessful. See Stevens Decl. ¶¶ 3, 6-10, 12-13; see Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). Second, the amount of money sought is not disproportionate or unreasonable given the number of copyrighted works that were publicly performed. Finally, because Defendants did not file an answer to the complaint, there is little to suggest that there is a possibility of a dispute concerning material facts. Nor is it likely that Defendants' default was due to excusable neglect. BMI sent numerous letters to Defendants regarding the need for a license before filing suit.

Accordingly, the motion for default judgment should be granted. The remaining issue is the amount of the judgment.

**Damages for copyright infringement**

Plaintiff BMI is the attorney-in-fact for the musical works owned by the other Plaintiffs and therefore may prosecute copyright infringement actions and recover damages in its own name. Saffer Decl. ¶ 6. Defendants are liable for the acts of infringement that occurred at B Street Billiards because once a copyright has been validly obtained, the owner of the copyright has the exclusive right to perform the copyrighted work publicly or to authorize public performance of the

4

copyrighted work, and any person who violates any of the exclusive rights of the copyright owner is "an infringer" of the copyright. 17 U.S.C. §§ 106(4); 501(a).

BMI requests statutory damages in the amount of $33,000, or $3,000 for each of the eleven unauthorized performances of musical compositions. See 17 U.S.C. § 504(c)(1) (providing for statutory damages between $750 and $30,000 per work). Plaintiff argues that it made substantial efforts to secure a licensing agreement with Defendants; representatives from BMI initiated approximately fifty-eight contacts with Defendants. These contacts were by telephone and by letter, and often included a sample license agreement and informational brochures, all of which were designed to inform Defendants of the need to purchase a license with BMI. Yet Defendants continued to perform copyrighted music without a license.

An award of damages for copyright infringement is within the discretion of the Court. 17 U.S.C. § 504(c). Factors the Court may consider in determining the amount of damages are: (1) the expense saved by the defendant in avoiding a licensing agreement; (2) profits reaped by defendant in connection with the infringement; (3) revenues lost to the plaintiff; and (4) the willfulness of the infringement. Cross Keys Publishing Co., Inc. v. Wee, Inc., 921 F. Supp. 479, 481 W.D. Mich. 1995) (citing Boz Scaggs Music v. KND Corp., 491 F. Supp. 908, 914 (D. Conn. 1980)).

Here, it appears that Defendants have saved approximately $4,000 in licensing fees from May 2003 through April 2005. See Stevens Decl. Ex. C (March 10, 2005 letter). Plaintiff also appears to have incurred costs associated with Mr. Pisano's investigative services. Id. Considering the amount of the license fee that Defendants avoided paying, and the fact that Defendants continued to infringe even after receiving Plaintiff's numerous communications, the Court recommends awarding statutory damages of $3,000 per song, for a total of $33,000.

**Injunctive relief**

The Copyright Act provides for injunctive relief to restrain future infringement. 17 U.S.C. § 502. In this case, Plaintiff BMI has provided evidence that Defendants infringed eleven songs, yet BMI seeks injunctive relief against unauthorized performance of any BMI-licensed music. The threat of continued infringement is real based on Defendants' failure to respond to BMI's numerous oral and written notices of infringement, or to stop infringing. And there is no indication that future

5

infringement would be limited to the eleven songs at issue in this case.  Therefore, the Court recommends permanently enjoining Defendants from publicly performing or causing the public performance of the eleven musical compositions at issue in this case or any musical composition licensed through BMI.

**Attorney's fees and costs**

Finally, Plaintiff BMI seeks reimbursement of the attorney's fees and costs that it has incurred in the prosecution of this action.  17 U.S.C. § 505.  Plaintiff has submitted the declaration of Karen Frank, which details the amount of time spent and the hourly rate of the lawyer and legal assistant who worked on this case.  A total of 4.5 hours of attorney time at the rate of $375.00 per hour and 10.4 hours of legal assistant time at the rate of $175.00 per hour was spent in researching and preparing the complaint, preparing an application for and obtaining entry of default and preparing the motion for default judgment.  The total amount of fees sought is $3,508.00.  Plaintiff also seeks $396.97 is costs, including the filing fee and the cost of serving Defendants.  The amount of time spent and the hourly rates are reasonable, and therefore the Court recommends awarding Plaintiff $3,508.00 in fees and $396.97 in costs.

**Conclusion**

The Court recommends granting Plaintiff's motion for default judgment in the total amount of $36,904.97 and issuing a permanent injunction.  Any party may serve and file specific written objections to this recommendation within ten (10) business days after being served with a copy.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3 .  Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: March 22, 2006

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

6